# Wytheville.

## WRIGHT ·V. COMMONWEALTH.

### June 24, 1909.

1. CRIMINAL LAW—*Cumulative Punishment—Indictment for Murder—Code, Sections 3905, 3906.*—The cumulative punishment provided by sections 3905 and 3906 of the Code for habitual offenders applies solely to cases where the accused is indicted and prosecuted for offenses punishable by confinement in the penitentiary, and not to indictments and prosecutions for capital felonies, though in such cases the jury may, in their discretion, find the accused guilty of a lesser offense. The statutes are highly penal and do not apply to cases which *may,* but to those which *must,* upon a strict construction, come within their language.

2. CRIMINAL LAW—*Indictment for Murder—Cumulative Punishment.*—If, on an indictment for murder, the prisoner be found guilty of an offense less than murder of the first degree, and sentenced to confinement in the penitentiary, the cumulative punishment provided by sections 3905 and 3906 may be added by proceedings had under sections 4180, 4181, 4182 and 4183 of the Code which are complementary to the prior sections, prevent a possible failure of justice, and spare the accused the injustice of having evidence of prior offenses introduced before the jury when upon trial for murder of the first degree.

3. CRIMINAL LAW—*Indictment for Murder—Count Charging Former Conviction of Felony—Surplusage—Evidence of Former Conviction.*—An indictment for murder is not bad on demurrer because it contains a count charging that the accused had been twice before sentenced in the United States to confinement in the penitentiary. The count charging the previous convictions must be rejected as surplusage. But if the prisoner objects to the introduction of evidence of such former convictions, his objection should be sustained, as such evidence tends to unduly prejudice the prisoner before the jury.

4. CRIMINAL LAW—*Evidence—Dying Declarations—Motive for Killing.*—The dying declaration of deceased that he did not know any motive on the part of the prisoner for shooting him, except that

he was angry because deceased had refused to rent him a piece of land, is admissible in evidence, though not conclusive of the fact; and it is competent for the prisoner to contradict it by showing that he was not informed of the purpose of the deceased with respect to the land until after the homicide had been committed.

5. CRIMINAL LAW—*Evidence—Remarks of Prisoner in Jail—Motive.*— On a trial for murder, it is competent for the Commonwealth to prove remarks of the prisoner while in jail that "he did not begrudge what he had done (though he did not say what he had done) * * *, that he had it to do, and if it were to do over again he would do it." Although he did not mention the name of the deceased in that connection, yet if he had reference to some other transaction it was competent for him to show it.

6. CRIMINAL LAW—*Instructions—Case at Bar.*—The instructions given in the case at bar are approved by the court. They relate to murder, malice, manslaughter, presumptions, reasonable doubt, self-defence, dying declarations, etc.

Error to a judgment of the Circuit Court of Dickenson county.

*Reversed.*

The following instructions were given on the trial:

"1. The court instructs the jury, that murder is the unlawful killing of any person with malice aforethought.

"2. Murder is distinguished by the law of Virginia as murder in the first degree and as murder in the second degree.

"3. The court instructs the jury, that whenever a killing is wilful, deliberate and premeditated, the law infers malice from this fact.

"4. The court instructs the jury, that murder in the first degree is any wilful, deliberate and premeditated killing with malice aforethought.

"5. The court instructs the jury, that to constitute a wilful, deliberate and premeditated killing it is not necessary that the intention to kill should exist for any particular length of time before the killing; it is only necessary that such intention should

come into existence for the first time at the time of the killing, or at any time previous.

"6. The court instructs the jury, that the rule of law is that a man shall be taken to intend that which he does, or which is the necessary consequence of his act.

"7. The court instructs the jury, that on a trial for murder the law of self-defense is the law of necessity, and the necessity relied on to justify the killing must not arise out of the prisoner's own misconduct, and that the prisoner can not justify the killing of the deceased by a plea of necessity upon himself.

"8. The court instructs the jury, that if they believe from the evidence beyond a reasonable doubt that Elijah Wright wilfully, deliberately, maliciously and premeditatedly shot and killed William Sifers, he is guilty of murder in the first degree and the jury should so find.

"9. The court instructs the jury, that as a matter of law, in considering the case, the jury are not to go beyond the evidence to hunt up doubts; nor must they entertain such doubts as are merely imaginary. A doubt, to justify an acquittal, must be a reasonable doubt, and it must arise from a candid and impartial investigation of all the evidence in the case. If, after considering all the evidence, you can say that you have an abiding conviction of the truth of the charge, then you are satisfied beyond a reasonable doubt.

"10. The court further instructs the jury, that if they believe from the evidence in this case beyond a reasonable doubt that the defendant, Elijah Wright, said in the hearing of William Sifers that 'Bill Sifers has been trying to agg up a racket all day,' and that the said William Sifers said to him that 'you are a liar,' and that the said defendant replied that 'you are another,' and immediately began to advance on the deceased with a knife in his hand, and that the deceased told him to stop, and shot in the ground near the defendant for the purpose of preventing the defendant from making an assault upon him with said knife, and that the said defendant thereupon forcibly dis-

armed the deceased, and after he had so disarmed him then and there wilfully, maliciously, deliberately, and premeditatedly shot and killed the said William Sifers as is charged in the indictment, he is guity of murder in the first degree, and the jury should so find.

"12. The court further instructs the jury, that murder is the killing of any person with malice aforethought, either express or implied. Malice in this definition is used in a technical sense, and includes not only anger, hatred, and revenge, but every unlawful and unjustifiable motive. It is not confined to ill-will to any one or more individual persons, but is intended to denote an action flowing from any wicked or corrupt motive and thing done with an evil mind and purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and fatally bent on mischief, and therefore malice is implied from any deliberate or cruel act against another, however sudden.

"13. The court tells the jury, that dying declarations, when deliberately made under the solemn sence of impending dissolution, and concerning circumstances in respect of which the deceased was not likely to have been mistaken, are entitled to as great weight, if precisely identified, as if the deceased had been living and sworn in court and had testified the same as said dying declaration.

"14. The court tells the jury, that they are the exclusive judges of the credibilty of the witnesses, and the weight to be given their testimony, but that they have no right to arbitrarily disregard the testimony of any witness; but in determining the credibility of witnesses, and the weight to be given their testimony, the jury must take into consideration the interest of the witness in the thing about which he testifies, his means of knowledge, bias, and prejudice in regard to the thing about which he testifies and his demeanor while testifying. And, when the jury have considered the testimony of witnesses according to

these principles, they should give to the testimony of each witness all the weight to which his testimony is entitled, if any."

*Dalson & Bond,* for the plaintiff in error.

*Wm. A. Anderson, Attorney General,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

This writ of error brings under review a judgment of the Circuit Court of Dickenson county of conviction of the plaintiff in error, Elijah Wright, of murder of the first degree.

In addition to the charge of murder of the first degree the indictment alleges that the accused had been twice before sentenced in the United States to confinement in the penitentiary.

There was a demurrer to the indictment which the court overruled; so that we are met at the threshold of the case with the inquiry, whether in a prosecution for murder of the first degree the allegation of previous convictions for felony is permissible under sections 3905 and 3906 of the Code.

Section 3905 is in these words: "When any person is convicted of an offense, and sentenced to confinement therefor in the penitentiary, and it is alleged in the indictment on which he is convicted, and admitted, or by the jury found, that he had been before sentenced in the United States to a like punishment, he shall be sentenced to be confined five years in addition to the time to which he is or would be otherwise sentenced."

And section 3906 provides: "When any such convict shall have been twice before sentenced in the United States to confinement in the penitentiary, he shall be sentenced to confinement in the penitentiary for life."

It has long been the policy of this Commonwealth to visit with cumulative punishment habitual offenders who come within the terms of these enactments. (The first statute on the subject was passed December 15, 1796. 2 Stat. at Large [New

Series], 1796-1802, sec. 24, p. 9.) We think, however, that both the phraseology and intendment of the present provisions preclude the possibility of their application to a prosecution for a capital felony, and demand that their operation be limited strictly to indictments for offenses punishable by confinement in the penitentiary only.

It is true that in a prosecution for murder of the first degree, upon the principle that an indictment for the greater includes the lesser offenses, the jury may in their discretion find the accused not guilty of murder of the first degree, but guilty of murder of the second degree or of voluntary manslaughter—both of which crimes are punishable by imprisonment in the penitentiary; or they may acquit of the felony and find him guilty of involuntary manslaughter, or of assault and battery. Yet it is likewise true, that if the accused be found guilty of murder of the first degree, as was done in this instance, then sections 3905 and 3906, manifestly can have no application to the case, because the statute unconditionally imposes the death penalty for that offense.

We conceive, therefore, that the only fair and reasonable construction that can be placed on the sections quoted is that they apply solely to cases where the accused is *indicted and prosecuted* for offenses punishable by confinement in the penitentiary, and not to indictments and prosecutions for capital felonies, though in such cases the jury may in their discretion find the accused guilty of a lesser offense.

These enactments, it must be remembered, are in a high degree penal, and consequently may not be extended by construction to cases not clearly within the language employed. *Jennings* v. *Com'th, ante,* p. 821, 63 S. E. 1080, 3 Va. App. 192; *Sutherland* v. *Com'th,* decided at the present term, *ante,* p. 834, 65 S. E. 15.

In the latter case, Judge Harrison, speaking for the court, says: "This is a penal statute, and it is an ancient maxim of the law that all such statutes must be construed strictly against

the State and favorably to the liberty of the citizen   *   *   *.
There can be no constructive offenses, and before a man can be
punished his case must be plainly and unmistakably within the
statute."

The rule is thus stated in 12 Cyc. 949, under the title, "Suc-
cessive Offenses and Habitual Criminals": "Statutes under
which more severe punishment may be inflicted upon the ac-
cused when the crime of which he is convicted is a second or
subsequent offense, being highly penal, should not be extended
in their application to cases which do not by the strictest con-
struction come under their provisions."

The same principle is strongly stated by Shaw, C. J., in
*Ex parte Seymore,* 14 Pick. (31 Mass.) 40.

The doctrine fairly deducible from the authorities seems to
be that such enactments do not apply to cases which *may,* but
to cases which *must,* upon a strict construction, come within
their language.

The subject is also quite fully treated in 8 Am. & Eng. Ency.
of Law, 479, *et seq,* under the head of "Cumulative Punish-
ment," and in none of the numerous decisions there assembled,
so far as we have had opportunity to examine them, has the
rule been attempted to be applied to a prosecution, the primary
purpose of which was to inflict capital punishment upon the
accused.   Indeed, the incongruity of such application would
seem obvious.   There can, of course, be no cumulative punish-
ment in a capital case, and the manifest design and purpose of
the legislature, as we have seen, was to prevent the repeti-
tion and increase of crimes by imposing additional imprison-
ment upon habitual offenders for successive offenses.   But we
cannot suppose that the legislature intended that the salutary
statutes should be used to prejudice a prisoner on trial for his
life, by opening wide the door to the admission of evidence of
distinct offenses, tending, at least, to establish the bad character
of the accused by showing that he is an old offender, on the
theory that in a prosecution of that sort it is possible for the

jury to find him guilty of an offense within the statute. If such construction were permissible, it might not infrequently result in the conviction of the accused of a capital felony upon evidence wholly inadmissible to establish his guilt. Surely, in the interpretation of these extremely penal statutes, the courts would not be warranted in adopting a construction which would render such a result possible.

It was not the intention of the statute, even in cases to which it applies, by the introduction of proof of former convictions, to supply substantive evidence of the guilt of the accused in the principal case, but only to enhance the punishment in the event his guilt should be proved by independent testimony.

In *Rand's Case,* 9 Gratt. 738, the accused was indicted for burglary and larceny under the Code of 1849, and the indictment also contained an allegation that he had been previously convicted of a felony in the Commonwealth of Massachusetts and sentenced therefor to confinement in the penitentiary. The statutory punishment for burglary was at that time confinement in the penitentiary not less than five, nor more than ten years. Code, 1849, ch. 192, sec. 11, p. 728.

In 1796, the legislature passed "An act to amend the penal laws of the Commonwealth," which provided for the establishment of the penitentiary, and the first section of which declared that "no crime whatsoever committed by any free person against this Commonwealth (except murder of the first degree), shall be punished with death within the same." This remained the law as to burglary until February 7, 1866, when the crime was made punishable with death, or, in the discretion of the jury, by confinement in the penitentiary. Acts of 1865-6, p. 90. As remarked, in the revision of 1796, provision was made for cumulative imprisonment for second convictions, and, in one form or another, such enactments have constituted part of our statute law hitherto.

In *Rand's Case,* the indictment failed to set out the time and place of the alleged former conviction, or that it was for an

offense committed before the commission of that for which the prisoner was on trial. Consequently, the court held evidence of the prior conviction inadmissible, because only applicable to the faulty count; and for the error of the trial court in admitting this illegal testimony, over the general objection of the accused, set aside the whole judgment, and awarded a new trial. It was said that the motion of the accused to exclude the record of the former conviction, "was though not in terms, in substance and effect, a motion to the court to instruct the jury to disregard that portion of the indictment alleging such conviction." In discussing the effect of the admission of such evidence, Daniel, Judge, at page 752, observes: "What is the effect of this error of the court? On the one hand it is argued by the attorney general that it should only affect so much of the judgment as relates to the additional punishment; and on the other hand it is insisted by the prisoner's counsel that it is cause for reversing the whole judgment, and remanding the case for a new trial. We can hardly say that the introduction of the evidence objected to was not calculated to prejudice the prisoner in the trial of the felony for which he was arraigned." He then quotes the language of Park, Judge, in *Rex* v. *Jones*, 25 Eng. C. L. R. 453, "that if the jury were aware of the prisoner's conviction it was (to use a common expression) like trying a man with a rope about his neck."

Continuing, the learned judge, at page 755, says: "What influence the evidence may have had in deciding the question of the guilt or innocence of the prisoner of the charges of burglary and larceny, for which he was on his trial, no one can say. But it is not difficult to believe that, in a case of doubtful or conflicting evidence, such proofs might exert an influence on the minds of the triers prejudicial to the cause of the prisoner. And we think the error in permitting the evidence to go to the jury cannot be regarded as cured by the statement which it appears was made by the judge to the jury, that the records were admitted and were to be received for the sole purpose of

showing that the prisoner had been previously convicted of a felony. Such a caution, though highly proper and calculated to guard the jury against yielding to any improper bias, could not wholly remove the unfavorable impressions which the introduction of the evidence must, most probably, have made on their minds. The allegation of the first conviction being faulty, the prisoner had the right to stand before his triers in the same plight as if such allegation had never been made. And if, upon his trial on an indictment containing no such charge, evidence such as that objected to had been introduced, there can be no doubt that its introduction would have been error entitling the prisoner to a new trial."

If this result should follow in a prosecution in which the evidence would have been admissible had the allegation of the first conviction not been faulty, with how much more reason should it apply in a prosecution for a capital felony, in which such evidence was not admissible in any aspect of the case?

It has been suggested that the construction we have given the statute would result in a miscarriage of justice, in the event the jury should find the prisoner guilty under the indictment of a less offense than murder of the first degree; that the evidence of prior offenses being excluded, the jury could not add the additional punishment required by the statute when the accused was found guilty of the lesser offense. This difficulty is, we think, removed by sections 4180, 4181, 4182 and 4183 of the Code.

Section 4180 provides: "When a person convicted of an offense, and sentenced to confinement therefor in the penitentiary, is received therein, if he was before sentenced to a like punishment, and the record of his conviction does not show that he has been sentenced under section thirty-nine hundred and five, or thirty-nine hundred and six, the superintendent of the penitentiary shall give information thereof, without delay, to the said Circuit Court of the city of Richmond, whether it be alleged or not in the indictment on which he was so convicted,

that he had been before sentenced to a like punishment." And the other sections provide for the imposition of the additional punishment.

These complementary sections prevent a possible failure of justice in the instance suggested, and at the same time the accused is spared the injustice of having evidence of prior offenses introduced before the jury where he is upon trial for murder of the first degree.

For the foregoing reasons, we are of opinion that the objection of the prisoner to the introduction of evidence of former convictions in the State of Kentucky ought to have been sustained.

This view does not, however, vitiate the indictment. It is a good indictment for murder of the first degree, and the allegations of previous convictions must be treated as surplusage; and in that aspect of the case the demurrer to the indictment was properly overruled.

The next assignment of error is to the action of the court in overruling the objection of the prisoner to the last question and answer in the testimony of Robert K. Harris, a witness for the Commonwealth, which undertook to give the dying declaration of the deceased, that he did not know of any motive on the part of the prisoner for shooting him, except that he was angry because the deceased had refused to rent him a certain piece of land.

This we think was admissible, though not conclusive evidence of the fact alleged, and it was competent for the accused to contradict it, as he sought to do, by showing that he was not informed of the purpose of the deceased with respect to the land until after the homicide had been committed. The issue of fact thus raised was a proper one for the consideration of the jury upon all the evidence bearing upon the question.

Nor did the court err in admitting the testimony of witnesses in regard to remarks of the accused while in jail, that "he did not begrudge what he had done (though he did not say what

he had done) * * *, that he had it to do, and if it were to do over again he would do it." It is true he did not mention the name of the deceased in that connection, yet if he had reference to some other transaction it was competent for him to show it. The evidence, though possibly of no great value, was rightly admitted.

The remaining assignment of error which demands consideration deals with instructions. Without undertaking to examine them in detail, it is sufficient to say that, when read together, the instructions given by the court fully and fairly stated the law of the case, both from the standpoint of the Commonwealth and of the accused. Of course, those in reference to alleged former convictions of the accused must be omitted.

As a new trial is to be granted, we shall refrain from expressing any opinion as to the weight or sufficiency of the evidence.

The judgment of the circuit court, for error in the admission of evidence of former convictions, must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had not in conflict with the views herein expressed.

KEITH, P., dissenting:

I agree with the opinion of the court upon the demurrer to the indictment, and as to the several assignments of error which it overrules. I am constrained, however, to dissent from so much of the opinion as holds that section 3905 of the Code does not apply where a capital offense is charged in the indictment, and that, while the allegation of such former offense in an indictment for a capital offense may be treated as surplusage and the indictment sustained, it is error to admit proof of such former offense, the principal reason assigned being that as the accused is charged with and may be found guilty of a capital offense under such an indictment, and as no punishment can be superadded to the death penalty, the only effect of such proof would be to prejudice the prisoner.

The necessary effect of all statutes, which upon the trial of an offender admit proof of a former offense in order to heighten the punishment, is in some degree to prejudice the prisoner. It is in the very nature of such statutes and cannot be avoided; yet the legislature of this State, of our sister States and of Great Britian have seen proper, in the effort to prevent crime, to. punish with greater severity one who has more than once offended against the law, or has become, in the language of some of the statutes, an habitual offender, than a person who is for the first time accused of crime.

So careful was the common law of admitting proof that might prejudice the prisoner, that it excluded evidence of the prisoner's character, unless he saw fit to put it in issue, and rigorously excluded all proof of former offenses; but, as we have seen, the legislatures of many States and of this Commonwealth have in their wisdom seen fit to abrogate this rule of the common law in certain classes of cases and admit proof of former offenses, where such offenses are alleged in the indictment, although the necessary and inevitable consequence is that to a greater or less degree it prejudices the prisoner. No one can doubt that upon a trial for grand larceny, which is punishable by confinement in the penitentiary, the allegation and proof of a former conviction of a like offense would influence the minds of the jury, and in a doubtful case might be a determining factor in reaching a verdict of guilty.

But with these considerations, I respectfully and earnestly submit, this court has no concern. We have nothing to do with them. Such questions are for the legislature. With abstract questions of justice and humanity, we, as judges, have no concern. We are here to administer the law as the legislature sees fit to enact it, and the only limitations upon its power with respect to the subject are such as the Constitution of the United States and of the Commonwealth impose. Among those limitations are that it can pass no *ex post facto* law; that it cannot put a man twice in jeopardy for the same offense; and that it

can inflict no cruel or unusual punishment. Our inquiry, therefore, is confined to a correct interpretation of the statute, and whether or not it prejudices the prisoner is a question with which we have no concern.

The indictment in this case is in the usual form for murder of the first degree, to which is added the allegation that the accused, before the commission of the offense charged in the indictment, had been twice sentenced to confinement in the penitentiary in the State of Kentucky. Under this indictment, the prisoner could have been found guilty of murder of the first degree, which is punishable by death; of murder of the second degree, which is punishable by confinement in the penitentiary for not less than five, nor more than eighteen years; of manslaughter, punishable by confinement in the penitentiary for not less than one, nor more than five years; and of involuntary manslaughter. In addition, if the jury found him guilty of an offense punishable by confinement in the penitentiary, there could have been added, by virtue of section 3905, an additional sentence of five years' confinement in the penitentiary.

The section referred to is as follows: "When any person is convicted of an offense, and sentenced to confinement therefor in the penitentiary, and it is alleged in the indictment on which he is convicted, and admitted. or by the jury found, that he had been before sentenced in the United States to a like punishment, he shall be sentenced to be confined five years in addition to the time to which he is or would be otherwise sentenced."

And section 3906 of the Code, having the same purpose in view, provides that if it is alleged in the indictment and admitted, or so found by the jury, that the accused has twice before in the United States been convicted of an offense punishable by confinement in the penitentiary, he shall be sentenced to confinement in prison for life.

In this connection it may be remarked. that the jury in their

verdict do not, under sections 3905 and 3906, impose the added punishment. They only find the fact and the additional term is imposed by the court in obedience to the law. If the jury found him guilty of murder of the first degree, nothing of course could be added to that punishment; and so if he was found guilty of involuntary manslaughter, which is a misdemeanor, the penalty provided by section 3905 could not have applied.

All of the offenses enumerated are included in the indictment for murder of the first degree. The indictment is to be taken as virtually charging that the prisoner was guilty of murder of the first degree; that he was guilty of murder of the second degree; that he was guilty of manslaughter; and that he had been convicted before of an offense punishable by confinement in the penitentiary. All of these offenses, including the charges of the former offenses committed in Kentucky, are put in issue by the plea of not guilty, and evidence tending to prove any one of them is admissible as being relevant to the issue joined. If this were not so, then inasmuch as the prisoner was charged with a capital offense, no evidence except such as tended to prove a capital offense could be admitted. If no such proof could be admitted, no verdict other than murder of the first degree could properly be found, which would be in the teeth of the decisions of this court, of the law as stated by Bishop on Criminal Law, Vol. I, p. 705, and of section 4040 of the Code, and would be logically a *reductio ad absurdum.*

It is true that evidence as to the former convictions can have no relevancy with respect to murder of the first degree. It is not, indeed, substantive proof of any of the offenses included in the indictment. The fact that he was guilty of former crimes in Kentucky does not prove or tend to prove the specific crime of murder for which the prisoner was indicted, and evidence with respect to it is pertinent only to that allegation of the indictment which, if not admitted, must, in the language of the statute, be by the jury found. If the prisoner had been

indicted, as he might have been, for murder of the second degree, or for manslaughter, and the indictment had contained the allegation with respect to the former offenses, there can be no doubt, I presume, that evidence with respect to them would have been free from all objection. In the indictment before us the offenses of murder of the second degree and of manslaughter are as completely comprehended as though the indictment had named those offenses, and had excluded the charge of murder of the first degree. When the evidence was offered it was for the court to determine whether or not it was relevant to any issue before the jury. The prisoner was upon trial for two offenses, the punishment for either of which would have been confinement in the penitentiary. He had by his plea put in issue the fact that he has committed the former offenses. If the jury found him guilty of murder of the second degree, or of manslaughter, and found also that he was guilty of the former offenses imputed to him, then all the conditions contemplated by the statute would have concurred, and there would have been no escape from the imposition of a sentence for the additional five years. How was the judge to know that the jury would find him guilty of murder of the first degree ? If he was guilty of murder of the first degree and punished by death, of course the penalty for the former offenses alleged against him would go for nothing; and so, if he were found guilty of a misdemeanor, as he might have been. Under such circumstances there was nothing for the court to do but admit the evidence and leave its value to be determined by the conclusion at which the jury might arrive, as it was impossible for the court to see what verdict the jury would ultimately render.

But it is said its effect would be to prejudice the jury—to dispose them to render a verdict of guilty of murder of the first degree when they otherwise might have inflicted a lighter punishment. This is true. Such might have been its effect; and such, I repeat, not only may be, but is the natural effect of

every charge of a former offense in an indictment, and of all proof of its commission. Judge Daniel, in *Rand's Case,* 9 Gratt. 738, refers to this, and properly makes it the cause of reversal; but it will be observed that it was error in that case and that case was reversed solely because the averment in the declaration did not comply with the statute law, and so far as that case is concerned it was controlled by the common law, which without doubt forbids proof, except in rare instances, of any crime other than that for which the accused is being tried.

The opinion of the court, in this connection, refers to a judgment of Judge Park, who was doubtless a very great judge but sometimes erred. It is in *Rex* v. *Jones,* in which he used the picturesque expression quoted by the court, that "if the jury were aware of the prisoner's conviction, it was like trying a man with a rope about his neck." It is this case which is referred to in 1 Bish. Crim. Law, at section 964, as follows: "Park, J., at first would not permit the jury to be informed of the prior conviction until it had passed upon the new charge, but this course the judges, at a meeting, deemed wrong. *Rex* v. *Jones,* 6 Car. & Payne 391. Then Parliament, by 14 and 15 Victoria, ch. 19, sec. 9, incorporated the former practice into the law. Since which time the prisoner is arraigned on the whole indictment in the usual manner; thereupon he pleads not guilty. The jury is first charged to inquire into the subsequent offense. Should the finding be guilty, it is next, without being sworn, to pass upon the other part of the indictment, and in each instance only the part of the indictment on which it is about to pass is read."

From that it would seem, and from the report of the case referred to it appears, that the judges, thirteen in number, disapproved of Baron Park's practice, and thereupon the matter was settled by act of Parliament and wise precautions taken to prevent prejudice to the prisoner. But our statute is an expression of the law as it stood in England before the act of Parlia-

ment, and Baron Park's construction of it would have been rejected by the judges.

I submit, that if the legislature wishes to have a prisoner tried "with a rope around his neck," or in any other mode not repugnant to some constitutional restriction, it is a matter with which the courts have no concern.

It is to be regretted that this case, which I deem an important one, is to be considered under circumstances which render it impossible fully to consult the statutes and decisions of other States. So far as I have been able to examine them, however, the statutes of other States differ in material respects from our own.

From *Rand's Case, supra,* we gather, at p. 744, that the Massachusetts statute provided, that "where a person had been convicted of a crime punishable by confinement to hard labor, he should, upon conviction of another offense punishable in like manner, be sentenced to a punishment in addition to the one prescribed by the law for such last offense."

In Texas, as appears from the report in *Long* v. *State,* 36 Tex. 6, it is provided that "if it be shown upon the trial of a felony, less than capital, that the defendant has been before convicted of the same offense, or of one of the same nature, the punishment on such second or other subsequent conviction, shall be the highest which is affixed to the commission of such offense in ordinary cases." And by another section it is provided, that "a person convicted a second time of any offense to which the penalty of death is affixed as an alternative punishment, shall not receive on such second conviction a less punishment than imprisonment for life in the penitentiary."

But in our statute there is no such limitation as is found in Massachusetts which limits the introduction of evidence of a former offense to indictments where the prisoner is chargeable with an offense punishable by confinement at hard labor, which of course excludes capital punishment; and no such limitation as is found in the Texas statute, which in terms excludes the

trial of capital cases. Our statute (section 3905) makes no reference to the charge for which the prisoner is being tried, nor to the character of the first offense, proof of which is authorized. It imposes no limitations and affixes no conditions, except that it must be alleged in the indictment on which the prisoner is convicted, and admitted or by the jury found that he had been sentenced. not for a like crime, but to a like punishment in the United States. The statute looks solely to the offense of which the accused is convicted; it has no reference to the offense with which he is charged; and this difference in phraseology between our statute and kindred statutes of other States could not have been the result of accident. It was a part of a well conceived and well considered scheme for the punishment of habitual offenders, which taken in connection with other sections *in pari materia* shows that the legislature was profoundly impressed with the policy of punishing with greater severity an habitual rather than an occasional offender, and took every precaution that no guilty man should escape. It might have been well to have thrown around the prisoner some of the safeguards that are introduced into the English statute before referred to; but the legislature has not seen fit to introduce them. It might have been well, had the prisoner so requested, to have postponed the introduction of the evidence of the former offense until a verdict had been reached upon the indictment on trial. This practice would have had the sanction of the high authority of Baron Park, but would have been in contravention of the judgment of the thirteen judges who were of a different opinion. Had it been done, however, it would at least have met with my approval. If the evidence was admissible for any purpose, the court was bound to admit it. *Cluverius* v. *Com'th*, 81 Va. 787. Had the prisoner desired to impose a limitation upon its effect, it was for him to request the court to make the restriction. It is of every-day occurrence that juries are told that they are not to consider evidence except subject to limitations which the court imposes. Evidence ad-

missible for one purpose is improper for another.  There is con-
stantly occurring in the progress of trials incidents which tend
to prejudice litigants in civil cases, or prisoner upon trial
for a criminal offence.  Courts sometimes admit evidence which
is afterwards excluded; a judge will sometimes make a remark
which will be prejudicial to the litigant or to the prisoner;
counsel, in the heat of controversy, indulge in language which
comes under the condemnation of the court.     In all such cases
all that can be done is to tell the jury that they must disregard
the inadmissible evidence or the improper observation.  It
always remains possible that they are unable to efface it from
their minds; that there still remains an unconscious impression
which may insensibly influence their judgement; but that grows
out of the infirmity of human nature.  To say that every error
committed during a trial, whatever effort may be made to cor-
rect it, should be ground for a new trial, would render the ad-
ministration of justice impossible.  Therefore, it is the constant
practice of other courts and of this court to affirm verdicts and
judgments rendered under conditions such as those to which T
have alluded.

It is plain, however, from the authorities that the fact that
the prisoner may be prejudiced by the introduction of the evi-
dence of former conviction is not the test.  If the evidence be
relevant, it must be admitted.  1 Bish. Crim. Law, sec. 396,
ch. 3.

In *Johnson* v. *People,* 55 N. Y. 512, Chief Justice Church
said: "The objection that the evidence may affect the prisoner's
character has no force when such evidence relates to the issue
to be tried.  Such evidence may be prejudicial to a prisoner as
to the second offense, and a case might occur of a conviction
upon too slight evidence, through the influence which a previous
conviction of a similar offense might exert upon the minds of
the jury; but there is no legal presumption that such a result
will ever be produced.  An English statute, passed in 1837,
requires the principal charge to be first found by the jury, and

then authorizes proof of the former conviction to be presented to them, but we have no such statute."

If our statute contained a provision similar to the English statute of 1837, referred to in *Johnson* v. *The People, supra,* then every objection urged in the opinion of the court to the admission of the evidence would vanish, and that without any change whatever in section 3905, except as to the order of proof. In such a case, if the jury found the prisoner guilty of a capital offense, the case would of course proceed no further, but if on an indictment for murder of the first degree he should be found guilty of one of the included felonies and of the former offense, then every requisite condition to the inflicting of the added penalty would exist. This would seem to show that only the fear of prejudicing the prisoner and not the terms of the statute leads to the exclusion of the evidence; but the authorities are conclusive that this reason is not sufficient if the terms of the statute do not require it. In other words, the proper interpretation of the language used in the statute can work no legal prejudice.

I am of opinion, therefore, that in this case, while the prisoner was charged with murder of the first degree, he was also charged with offenses punishable by confinement in the penitentiary; that when the evidence was offered it could not be foreseen at what verdict the jury would arrive; that the evidence of a former conviction was pertinent to be considered by the jury in ascertaining whether the prisoner had been convicted of the former offenses or charges, had they been of opinion that he was guilty of a less offense than murder of the first degree; that our statute differs materially from like statutes of other States to which we have access; that while it may prejudice the prisoner, such prejudice is inherent in the very nature of all such statutes; that while it might have been proper, had the prisoner so requested, that the judge should charge the jury not to consider the proof of the first offense as substantive proof of guilt of the offense for which he was being tried and that they should

especially not allow it to influence them in determining whether
or not the prisoner was guilty of murder of the first degree,
there is no provision of the statute nor any rule of law which
required the judge, of his own volition, to make any such state-
ment to the jury; that the evidence being admissible, it does
not in a legal sense prejudice the prisoner; and that there was
no error in the ruling of the trial court in this respect.

The effect of the opinion of the court is to read into section
3905 an exception with respect to trials of all offenses in which
capital punishment may be inflicted, the tendency of which is
to afford the worst offenders an avenue of escape from the
harsher punishment, which I think is in direct contravention
of the policy of our law.

To answer this, the court in its opinion refers to section 4180
of the Code, which provides, that "when a person convicted of
an offense, and sentenced to confinement therefor in the peni-
tentiary, is received therein, if he was before sentenced to a like
punishment, and the record of his conviction does not show that
he has been sentenced under section thirty-nine hundred and
five, or thirty-nine hundred and six, the superintendent of the
penitentiary shall give information thereof, without delay, to
the said Circuit Court of the city of Richmond, whether it be
alleged or not in the indictment on which he was so convicted,
that he had been before sentenced to a like punishment."

This section is treated by the court as supplementary of sec-
tion 3905, and as intended to authorize the imposition of the
added penalty where it has not been imposed by the trial court.
This was doubtless the object of the section.   It operates only
upon such cases as might have been, but were not, punished
under sections 3905 and 3906.   I think it equally plain that it
does not apply to any case which might not have been punished
under those sections.   And yet it is a matter of frequent oc-
currence that a man in prison upon a conviction for murder
or manslaughter is brought before the circuit court under section
4180 and the additional punishment imposed upon him.   Now

in all those cases the man was indicted for murder of the first degree. He was convicted of a less offense, and sentenced to the penitentiary; and, having undergone a former conviction, he comes directly within the terms of section 3905 and section 4180; and it seems to me clear that if the added punishment can be imposed under section 4180 upon a man who was indicted for murder of the first degree, found guilty of a less offense and sentenced to the penitentiary, it necessarily follows that the added penalty could have been imposed at the trial under section 3905. The legislature, in furtherance of its policy to punish habitual offenders, was taking both chances. If the facts were known to the trial court, it was proper to indict and punish him in that court; but if for any reason that was not done, then jurisdiction was conferred upon the Circuit Court of the city of Richmond, at the instance of the superintendent of the penitentiary, to add the additional penalty. But while section 3905 must embrace every case which could come under the influence of section 4180, the converse is not true, and section 4180 does not embrace every case in which the trial court might, under section 3905, have imposed the additional penalty. The court, under section 4180, can only be put in motion by the superintendent of the penitentiary, while under section 3905 the attorney for the Commonwealth and the grand jury are charged with putting the machinery of the law in motion, and that opens the door to every possible avenue of information with respect to the former conviction.

The court being of opinion that the judgment should be reversed upon other grounds, does not deal with the motion to set aside the verdict as contrary to the evidence; but as I am of opinion that the judgment should be affirmed, my opinion must, of course, cover every assignment of error.

I shall not undertake to discuss the facts.

The law governing such cases is nowhere better stated than in *Bull* v. *Com'th,* 14 Gratt. 613: "The appellate court will not reverse the judgment, unless by rejecting all the parol

evidence for the exceptor and giving full faith and credit to that of the adverse party the decision of the court below still appears to be wrong."

Since that decision was pronounced, section 3484 of the Code has been enacted, which declares that if any case at law, civil or criminal, is tried by a jury and a party excepts to the decision on the ground that it is contrary to the evidence, and the evidence is certified, the rule of decision in the appellate court, in considering the evidence, shall be as on a demurrer to the evidence by the appellant.

Now, whether the evidence in this case be considered under the statute, or under the law as it existed before the statute, it is ample to sustain the verdict. The jury were carefully and correctly instructed; and, upon the whole case, I am of opinion that the judgment should be affirmed.

*Reversed.*

CARDWELL, J., concurs with KEITH, P.