# WILBUR B. JOHNSON v. STATE.

No. A-10278.    Sept. 13, 1944.

(151 P. 2d 801.)

72

Hubert Hargrave, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, W. B. Johnson, was charged by information filed in the superior court of Seminole county with the crime of murder; was tried, convicted, and sentenced to serve life imprisonment in the State Penitentiary, and has appealed.

On July 23, 1941, the defendant shot the deceased, R. A. Davis, with a 38-caliber pistol, which caused the death of the deceased two days later. About a year prior

to the killing, the defendant was hired by the deceased to work on his farm near the town of Maud. Later, in February, 1941, the parties started farming certain land on a share-crop basis. In connection with these operations, they jointly borrowed money from a Maud bank, and also carried a joint account with two or three business establishments. The defendant was a widower 66 years of age. The deceased was 36 years of age, and lived with his wife on the farm. About two weeks before the killing occurred, the defendant, who had been living in the house with the deceased, moved to a small house on a lease adjoining the farm of deceased.

According to the evidence of the state, on the morning the shooting occurred, the deceased took some bantam chickens allegedly belonging to the defendant over to the shack where defendant had moved. An argument arose because the deceased failed to bring a bantam rooster which the defendant claimed belonged to him. In the argument that ensued over the bantam rooster, the deceased called the defendant a "damn liar." This enraged the defendant, and he went into the shack after his pistol. Upon his return to the pick-up truck where deceased was sitting behind the steering wheel, the defendant fired a shot which struck deceased in the right shoulder and ranged downward severing the spinal cord and causing complete paralysis of the deceased's body below the place where the spinal cord had been severed. Some neighbors were attracted to the scene by the shooting and the yelling of deceased, and they removed the deceased to a hospital at Maud, where he died two days later. While in the hospital, the deceased made a statement to the officers concerning the incident surrounding the shooting, which statement was admitted in evidence as a dying declaration.

The defendant testified that the deceased had taken advantage of him and had not carried out certain transactions in accordance with promises made to the defendant. That the deceased was younger and much stronger man than he was, and that at the time the shooting occurred the deceased had ordered the defendant to leave the place, and that he told the deceased that he was not going to leave, but that he intended to finish the crop; that deceased then started toward defendant, and defendant went into the shack; that deceased started in the door, and, to quote the defendant, "I ran in that door, pulled out that six-shooter, and said 'Cotton, don't come in that door.' He said, 'Hell, you won't do nothing,' and started in, and, bam, I took him." On cross-examination, the defendant admitted that he had been convicted of manslaughter in Pontotoc county, Okla., and served 15 years, and that he had also been convicted previously of armed robbery.

It is first contended that the trial court erred in overruling the demurrer to the amended information filed against the defendant for the reason that it charged the crime of murder, the same being a second and subsequent offense. That the statute authorizing the filing of an information charging a former conviction is only for the purpose of increasing the punishment; therefore, in a capital offense, it is improper to charge the alleged offense was a second or subsequent offense for the reason that this allegation would not authorize an increase in punishment for the alleged offender, but could only be used by the state to attack the character and reputation of the defendant by introducing evidence in chief to show former convictions.

The amended information in question, omitting formal parts, provides:

"That at and in the county of Seminole, and the State of Oklahoma, on or about the 23 day of July, 1941, and prior to the filing of this information, said defendant, Wilbur B. Johnson did then and there wilfully, unlawfully and feloniously, with premeditated design to effect the death of R. A. Davis, shoot and discharge into the body of the said R. A. Davis, certain metal bullets from a certain gun, and there inflicting upon the body of the said R. A. Davis, certain mortal wounds, from the wounds the said R. A.. Davis thereafter did die on the 25th day of July, 1941.

"Said offense being a second and subsequent offense, he, the said Wilbur B. Johnson having been previously convicted in the District Court of Pontotoc County, Oklahoma, a Court of competent jurisdiction, in Case No. 2027, for the crime of Manslaughter in the First Degree, on the 8th day of April, 1929, and thereafter, on the 11th day of April, 1929, he, the said Wilbur B. Johnson, was by judgment and sentence of the Court sentenced to serve a term of fifteen (15) years in the State Penitentiary at McAlester, Oklahoma, for the crime of Manslaughter in the First Degree, and against the peace and dignity of the state."

The question raised by counsel for defendant is very interesting and is without judicial precedent in this state. Counsel for both the state and defendant have stated to the court that they had been unable to find any authority passing directly upon the point herein involved, except counsel for defendant insists that the case of Wright v. Commonwealth, 109 Va. 847, 65 S. E. 19, is in point.

In determining the disposition of this case, the instructions pertaining to this issue should be fully considered along with the evidence which was permitted to go to the jury. In this case, the killing was admitted; the plea was one of self-defense. Under the record herein, the court was bound to submit to the jury not only the

charge of murder as alleged in the information, but, also, the included and lesser offense of manslaughter in the first degree. Manslaughter in the first degree is punishable by imprisonment in the State Penitentiary for any period of time not less than 4 years. 21 O. S. 1941 § 715. Under the second offense statute, 21 O. S. 1941 § 51, in case the jury should find the accused guilty of manslaughter in the first degree, and further find that the said crime was a second and subsequent offense, the minimum punishment which they could assess would have been a term in the State Penitentiary of not less than 10 years.

It seems well settled that the purpose of the habitual criminal statute is to authorize the infliction of a greater punishment where one accused is found guilty of committing a second or subsequent offense. Spann v. State, 69 Okla. Cr. 369, 103 P. 2d 389, 390; Ex parte Wright, 78 Okla. Cr. 157, 145 P. 2d 772; Ex parte Shockley, 78 Okla. Cr. 701, 144 P. 2d 118; Ex parte Wray, 61 Okla. Cr. 162, 66 P. 2d 965.

It is also well settled that in order to subject an accused to the enhanced punishment for a subsequent offense, it is necessary to allege in the indictment or information the fact of a prior conviction or convictions. O'Neil v. State, 76 Okla. Cr. 107, 134 P. 2d 1033; Long v. State, 77 Okla. Cr. 174, 140 P. 2d 600; Ex parte Weaver, 60 Okla. Cr. 290, 64 P. 2d 925.

There would be considerable merit to the argument of counsel for defendant if this were a case where the defendant would be guilty of murder or nothing. As was said in this case of Wright v. Commonwealth, supra [109 Va. 847, 65 S.E. 20]:

"It has long been the policy of this commonwealth to visit with cumulative punishment habitual offenders

who come within the terms of these enactments. * * * We think, however, that both the phraseology and intendment of the present provisions preclude the possibility of their application to a prosecution for a capital felony, and demand that their operation be limited strictly to indictments for offenses punishable by confinement in the penitentiary only. * * *

"The subject is also quite fully treated in 8 Am. & Eng. Ency. of Law, 479, et seq., under the head of 'Cumulative Punishment,' and in none of the numerous decisions there assembled, so far as we have had opportunity to examine them, has the rule been attempted to be applied to a prosecution, the primary purpose of which was to inflict capital punishment upon the accused. Indeed, the incongruity of such application would seem obvious. There can, of course, be no cumulative punishment in a capital case, and the manifest design and purpose of the Legislature, as we have seen, was to prevent the repetition and increase of crimes by imposing additional imprisonment upon habitual offenders for successive offenses; but we cannot suppose that the Legislature intended that these salutary statutes should be used to prejudice a prisoner on trial for his life, by opening wide the door to the admission of evidence of distinct offenses, tending, at least, to establish the bad character of the accused by showing that he is an old offender, on the theory that in a prosecution of that sort it is possible for the jury to find him guilty of an offense within the statute. If such construction were permissible, it might not infrequently result in the conviction of the accused of a capital felony upon evidence wholly inadmissible to establish his guilt. Surely, in the interpretation of these extremely penal statutes, the courts would not be warranted in adopting a construction which would render such a result possible.

"It was not the intention of the statute, even in cases to which it applies, by the introduction of proof of former convictions, to supply substantive evidence of the guilt of the accused in the principal case, but only to enhance the

punishment in the event his guilt should be proved by independent testimony."

It is interesting to note that there is quite a distinction between the statutes of Virginia on this question and the statutes of Oklahoma. Virginia has a similar statute to ours providing for an enhanced punishment in case of a conviction where the indictment alleges a second or subsequent offense. However, in addition to that statute, they have another statute providing for the imposition of additional punishment by the Circuit Court of the City of Richmond, when the superintendent of the penitentiary calls his attention to the fact that the accused had prior to his present conviction served a sentence in said institution, and said prior conviction was not alleged in the indictment under which the accused was sentenced. The Supreme Court of Appeals of Virginia discusses this other statute in the case of Wright v. Commonwealth, supra, as follows:

"It has been suggested that the construction we have given the statute would result in a miscarriage of justice, in the event the jury should find the prisoner guilty under the indictment of a less offense than murder of the first degree; that, the evidence of prior offenses being excluded, the jury could not add the additional punishment required by the statute when the accused was found guilty of the lesser offense. This difficulty is, we think, removed by sections 4180, 4181, 4182 and 4183 of the Code of 1887 (Code 1904, pp. 2181, 2182).

"Section 4180 provides: 'When a person convicted of an offense, and sentenced to confinement therefor in the penitentiary, is received therein, if he was before sentenced to a like punishment, and the record of his conviction does not show that he has been sentenced under section thirty-nine hundred and five, or thirty-nine hundred and six, the superintendent of the penitentiary shall give information thereof, without delay, to the said circuit court of the city

of Richmond, whether it be alleged or not in the indictment on which he was so convicted, that he had been before sentenced to a like punishment.' And the other sections provide for the imposition of the additional punishment.

"These complementary sections prevent a possible failure of justice in the instance suggested, and at the same time the accused is spared the injustice of having evidence of prior offenses introduced before the jury where he is upon trial for murder of the first degree."

The trial court evidently agreed with the theory of counsel for defendant that you could not charge the crime of murder as a second and subsequent offense because an examination of the instructions discloses that he defined the crime of murder and instructed the jury that if they should find beyond a reasonable doubt that the defendant was guilty of the crime of murder, that they should assess his punishment at death or life imprisonment. No mention of a subsequent conviction is set forth in this instruction. However, in defining manslaughter in the first degree and instructing on that issue, the court further told them in defining the punishment to be fixed in case the jury found the defendant guilty of manslaughter in the first degree, and further found that it was a second and subsequent offense that the punishment should be imprisonment in the State Penitentiary for any term not less than ten years.

We can readily see the situation confronting the county attorney. He knew from the facts developed at the preliminary examination that the issue of manslaughter in the first degree would have to be submitted to the jury. He was confronted with the fact that in case of a conviction of manslaughter in the first degree, the minimum punishment would be four years in the State Penitentiary.

The county attorney further knew that defendant had previously been convicted and had served a term in the

State Penitentiary for manslaughter in the first degree, and he knew that if the jury should find the defendant guilty of manslaughter in the first degree, and that it was a second offense, that the minimum punishment would be a term of ten years in the State Penitentiary. Under these circumstances, we think the county attorney was justified and did his duty in asserting the allegation of a second offense in the information.

As to the matter of pleading, it is doubtful if the issue presented by defendant was properly raised by a demurrer to the information. The information properly charged the crime of murder. All of the necessary elements of murder were set forth in the information. The issue could have been raised by motion to strike the allegation of a second offense at the time of the arraignment of the accused, or by objection to the introduction of evidence as to the former conviction during the trial. In ruling upon the demurrer to the information, it was only incumbent upon the court to determine whether the information was reasonably certain as to the offense charged and was couched in such language as to enable a person of common understanding to know what is intended so that he may prepare his defense, and so that a judgment of acquittal or conviction would be a bar to a subsequent prosecution for the same offense. The information in the instant case meets this test.

We have carefully examined the instructions in this case, and, while there are some slight imperfections in the wording of some of them, they substantially state the law of the case. The court gave an instruction pertaining to the admission of the evidence of a prior conviction which reads as follows:

"You are instructed, that in this case the defendant is charged with murder, which includes the lesser offense

of manslaughter in the first degree, as being a second and subsequent offense, and it is alleged that the defendant had been previously convicted in the district court of Pontotoc county, Oklahoma, as charged in the information.

"You are instructed that an admission of evidence of a prior conviction must be proven beyond a reasonable doubt, and in this case the admission of such evidence of a prior conviction should not be construed by you as tending to prove the guilt of the defendant in this case, and has been admitted only for the purpose of determining the punishment to be given this defendant."

It is next contended that the court erred in admitting in evidence over the objection of defendant the statement made by deceased in writing to the county attorney and sheriff of Seminole county, upon the theory that said statement was a dying declaration of the deceased. The statement in question reads:

"My name is Roy A. Davis, and I make this statement at the Maud Hospital, realizing that I may die, as I was shot by W. B. Johnson about 8 o'clock this morning about 3½ miles north of Maud, in Seminole county. He had been living at our home, but had moved out to this place, and I was taking some bantam chickens to him that he had left at our home. He claimed there was a rooster of his that I had not brought, but it was not his rooster, so I told him he was a damn liar, then we talked some more, then he went in the house and I thought he was in a good humor, and he came back out to the car, walked up to me, and shot me in the right shoulder, and said, 'Now, who is a damn liar,' and then said, 'I am going to shoot you right between the eyes,' and I begged him not to and told him I thought he already had me. He snapped the pistol once more pointing it at my head. I had no gun or knife or other weapon, and had both hands on the steering wheel when Johnson shot me. I did not even expect him to shoot me. After he shot me, I asked

him to call Jack Whitehead to bring me to the hospital, and he wouldn't do it. I had never threatened to harm Johnson anyway.

"(Signed) R. A. Davis."

The defendant contends that the language, towit, "realizing that I may die," conclusively shows that the deceased, R. A. Davis, "had not abandoned hope of recovery," and hence under the rule announced in Bilton v. Territory, 1 Okla. Cr. 566, 99 P. 163, the dying declaration was improperly admitted.

If we were to consider this proposition based solely upon the language employed in the statement, this contention would probably have to be sustained, but in order to determine the state of mind of deceased at the time the statement was given, the state introduced the evidence of the examining physician and other parties who talked to the deceased at about the time of the giving of the statement. The wife of deceased, who was also a registered nurse, testified on this point as follows:

"Q. What did he say to you in reference to his feeling as to whether he was going to live or die? A. Well, he just merely said he would not last long, and asked me to get his folks. He wanted to see his folks before he died."

The examining physician, after testifying that the bullet had severed the spinal cord resulting in complete paralysis from the abdomen down, testified:

"Q. Doctor, I will ask you from your examination of the deceased, when you saw him there at the hospital, if you ever felt he had any chance to recover? A. If I did? Q. Yes, sir. A. No, sir. Q. I will ask you if the deceased made any statements to you that morning about whether he was going to get well? A. Yes, sir. Q. What statement did he make? A. Well, it was either when he was in the operating room or after I got him to his private

room; of course, we naturally try to brace a fellow up. Q. Doctors never tell a fellow they are going to die? A. No, sir, I don't. I said you are going to be all right, Cotton; he said, 'No, I can't make it.' I said he was going to be all right."

On cross-examination, he testified:

"Q. Doctor, do you believe he had a firm belief he was mortally wounded? A. Yes, sir."

The sheriff testified:

"Q. Now, before she (Mrs. Davis) came in the room, tell the court the conversation you had with Mr. Davis? A. I introduced myself to him and told him who I was, I said, 'Well, do you realize you might die from this wound?' and he said, 'Yes,' and he said, 'Yes, I know I will.' Q. You say you asked him if he knew he was going to die? A. I asked him if he realized he might die and he said 'I am going to die.' "

In the case of McClendon v. State, 36 Okla. Cr. 11, 251 P. 515, the rule as to the admissibility of a dying declaration is stated as follows:

"To warrant the admission of a statement as a dying declaration, it is not essential that there be an express declaration that declarant is going to die, or that he has no hope of recovering. It is sufficient if it satisfactorily appears that he believed he could not survive, whether it be directly proven by the express language of the declarant or from the other circumstances of the case, just as the nature and extent of the injuries, his evident danger, the opinion of medical attendants, stated to him, or the length of time between the time of statement and death." Allen v. State, 16 Okla. Cr. 136, 180 P. 564; Elliott v. State, 18 Okla. Cr. 230, 194 P. 267; Smith v. State, 56 Okla. Cr. 318, 38 P. 2d 591.

The trial court properly excluded the jury at the time the question of the admissibility of the dying declaration arose. In the absence of the jury, the court heard proof

of its admissibility. At the conclusion of the evidence, the trial court instructed the jury as follows:

"You are further instructed that the prosecution has sought in this case to prove certain statements, which it is claimed the deceased made a short time prior to his death, as his dying declaration; and in this connection you are instructed, that, under the law, before these statements can be considered by you, you must be able to find in the light of all the facts and circumstances appearing upon the trial, that at this very time these statements were made the deceased had given up all hope of recovery and believed that he would die; and even should you find such statements were made, and under the conditions which render them admissible, you are to determine as to whether or not the deceased was correctly understood by the witnesses, and what he said correctly detailed by them, and, should you find all these facts in favor of the prosecution, you are not bound to believe the facts stated in said dying declaration as true, but you should weigh such statements and consider them together with all the other evidence in the case."

It is our conclusion, after a consideration of all of the evidence, that the facts and circumstances were such as warranted the trial court in concluding that the deceased was under a sense of impending death at the time he made the statement to the officers, and properly admitted said statement in evidence.

The physical facts and circumstances all corroborate the theory of the state concerning the killing, and the jury was amply justified in concluding that the defendant was guilty of murder as charged in the information. If the defendant's story of the homicide had been true, the deceased would have fallen at the door because the shot which struck him caused an instant paralysis of his lower limbs. When the neighbors ran to the scene of the shooting, they found the deceased under the steering wheel,

and they had great difficulty in moving him because of the complete paralysis which he was suffering. There is no dispute that the deceased was unarmed. As further corroboration of the statement of the deceased was the testimony of the sheriff that two of the shells found in the pistol used by defendant had been snapped.

There are no material errors in the record sufficient to require a reversal of this case, and the judgment and sentence of the superior court of Seminole county is accordingly affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.