## JOHN ALLEN v. STATE.

No. A-2841.    Opinion Filed May 8, 1919.

Rehearing Denied May 31, 1919.

(180 Pac. 564.)

1. **APPEAL AND ERROR—Change of Venue—Discretion—Reversal.** An application for a change of venue is addressed to the sound discretion of the trial court, and, unless it clearly appears that there is an abuse of such discretion, this court will not reverse the judgment for failure of the trial court to grant a change of venue.

2. **JURY—Drawing of Additional Names—Open Venire.** Under the statute (sections 3692 and 3693, Rev. Laws 1910), it is within the discretion of the trial court to order an additional drawing of names from the jury box, or to direct that an open venire issue to the sheriff for such number of jurors as may be deemed necessary to be selected from the body of the county.

3. **HOMICIDE—Dying Declaration—Question for Court.** It is the province of the court to determine, in the first instance, the admissibility of declarations offered in evidence as dying declarations.

4. **SAME—Admissibility.** Where it is shown that deceased had been advised by the attending physician, and that the advice was such as to induce in his mind a belief that recovery was impossible and death impending, a declaration made by deceased after he had been so advised is admissible as a dying declaration.

5. **EVIDENCE—Medical Books.** Medical books are not admissible as testimony.

6. **HOMICIDE—Homicide in Commission of Robbery—Intent—"Murder."** A homicide perpetrated without any design to effect death by a person engaged in the commission of a robbery is, under the statute, "murder," although the robber did not intend to kill when he fired the fatal shot.

7.  **APPEAL AND ERROR—Invited Error—Instructions—Complaint.**
    In a prosecution for murder where erroneous instructions are
    given at the instance or request of the defendant, and being more
    favorable to the defendant than the law requires, he cannot after-
    wards be heard to complain that the giving of the law as requested
    was error on the part of the trial court.

*Appeal from District Court; Love County;*
*W. F. Freeman, Judge.*

John Allen was convicted of manslaughter in the first
degree, and he appeals. Affirmed.

*Jas. H. Mathers,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst.
Atty. Gen., for the State.

DOYLE, P. J.  This appeal is prosecuted from a con-
viction had in the district court of Love county in which
plaintiff in error, John Allen, was found guilty of man-
slaughter in the first degree, and his punishment assessed
at imprisonment in the penitentiary for the period of
21 years.

The information jointly charged that in said county
on the 28th day of November, 1915, John Allen and Tom
Canty, while acting together in the commission of a fel-
ony, to wit, joint robbery, did kill and murder one Pete
Roland, by shooting him with a pistol.

The evidence shows: That Sunday afternoon and
evening on the date alleged, Pete Roland, the deceased,
together with Ott Chambers, Elmer Hensley, Sid Sloan,
Claude Blankenship, and Bill Canty, were playing cards in
an open place in the brush about three-quarters of a mile
west of the town of Oswalt. That night about 8 o'clock they
had two fires burning, when defendant John Allen and Tom
Canty stepped from the brush with six-shooters in their
hands, and ordered, "Hands up." Pete Roland started to

run, and defendant Allen shot him; took his money from him and dragged him back. They searched those present, taking from them their money and valuables, and then lined them up one behind the other and marched them away, telling them not to look back or to come back. After marching about 150 yards, and after waiting a few minutes, they returned and picked up Roland and carried him to a nearby house. Two or three of those present testified that they had known the defendant Allen for about ten years, and that he was the man that shot Pete Roland.

Several witnesses testified to meeting defendant Allen and Tom Canty that evening not far from where the shooting occurred.

As a witness in his own behalf, defendant Allen testified that he had lived in Love county 14 years; that on the Sunday Pete Roland was shot he left home about 1 o'clock and visited one or two neighbors, later met Tom Canty on the road, and he got on the horse behind him, and they started to Oswalt; that he had been drinking that afternoon with the boys; that Tom Canty gave him a drink that made him sick, and on getting to Oswalt he gave him another drink; that his mind was absolutely blank from the time he took the last drink until the next morning; that he had no recollection of anything that occurred that Sunday night after arriving at Oswalt with Tom Canty; that the whisky he drank was doped or poisoned; that he and Pete Roland were friends; that early Monday morning he was told that Pete Roland had been shot, and that he was accused of it, and he examined his gun to see if there were any empty shells in it, and found that it had not been fired; that his mind at that time was cloudy.

Mrs. John Allen testified that her husband returned that Sunday night about 11 o'clock; that she heard him making a noise in the yard and went out and called to him, and he did not answer; that he tried to talk, but could not say anything that she could understand; that he looked crazy and acted crazy, and his eyes were glassy; that he did not know where he was and did not know her; that she bathed his head and finally got him to lie down across the bed with his clothes on; that the next day his mind did not seem to be right.

Bill Canty testified that he was a brother of Tom Canty, and was present when Pete Roland was shot; that immediately before the shooting defendant John Allen and another man with a handkerchief over his face appeared at the poker game; that he did not know the man with the mask; that he heard the shot, but did not see who fired it, and did not see defendant Allen strike or kick Roland; that he was charged with murder, arrested, and held in jail 38 days.

The first assignment of error is that the court erred in denying defendant's application for a change of venue. The record shows that, five days before the trial began, the defendant served notice upon the county attorney that he would make application for a change of venue on account of the prejudice of the inhabitants of Love county, and his application was supported by a large number of affidavits.

The state, resisting the application, examined said affiants in open court. Several of said affiants testified they were not sworn to the affidavits signed by them, and that no notary public was present when they signed the same. Several stated they thought they were signing a

petition to remove the trial from Love to another county. A few of said affiants could not call to mind the name of any person who said defendant could not get a fair and impartial trial in Love county. Two of said affiants had been convicted of violating the prohibitory liquor laws.

The state then called and examined an equal number of witnesses from different parts of the county to show that there was not in the minds of the inhabitants of Love county such bias or prejudice as would prevent defendant from having a fair and impartial trial therein.

It has been the uniform holding of this court that the granting of a change of venue is, under the statute, a matter resting within the sound discretion of the trial court, and, unless it clearly appears that there is an abuse of such discretion, this court will not reverse the judgment for failure of the trial court to grant a change of venue. *Gentry v. State,* 11 Okla. Cr. 355, 146 Pac. 719, and cases cited.

After a careful examination of the testimony taken upon the hearing, which covers more than 200 pages of the transcript, our conclusion is that the trial court was fully warranted in finding that there was no prejudice which would prevent said defendant receiving a fair and impartial trial in Love county. It follows that the court did not err in denying the application for a change of venue.

A challenge in writing was interposed in behalf of the defendant to a panel of additional jurors summoned upon an open venire directed to the sheriff, on the ground:

"That the talesmen served and summoned herein were not drawn, served, summoned, and made to appear as required by law, and that passion, prejudice, and unfairness

was exhibited in the selection of said jurors, which facts defendant offers proof thereof."

In support of this challenge, defendant called juror R. Duke, who testified that he lived in Love's Valley, and the previous day the sheriff telephoned him to meet him at the store; later a deputy sheriff met him there and summoned him as a juror, and then asked to show him where certain persons lived; that he went with the deputy sheriff to four places where jurors were summoned.

Also W. R. Richards, court clerk, who testified that the names in the jury box had not been exhausted.

The statute authorizes a challenge to the panel when the panel is from persons whose names are not drawn as jurors, on account of any bias of the officer who summoned them, which would be good ground of challenge to a juror. Section 5848, Rev. Laws 1910. If the challenge be considered as made for bias of the officer, it was properly overruled, because there is nothing in the record to show that there was any bias, actual or implied, on the part of the officer who summoned the open venire.

The statute provides that:

"Additional and other drawing of as many names as the court may order may be had at any such time as the court or judge may order for the completion of a grand or petit jury panel, or for the impaneling of a new grand or petit jury, during any term of court, if, in the judgment of the court, the same shall be necessary, or, if for any cause, the court, in its discretion, shall deem other jurors necessary." Section 3692, Rev. Laws 1910.

The statute further provides that—

"At any time during the term of any court, after the petit jury has been drawn and summoned in the manner herein provided for, when, for the trial of any cause, civil

or criminal, the regular panel of jurors shall appear to be insufficient, the jury may be completed from talesmen, or the court may direct that an open venire be issued to the sheriff or other suitable person, for such number of jurors as may be deemed necessary, to be selected from the body of the county, or from such portion of the county as the court may order: Provided, that no person shall serve as a talesman oftener than once a year." Section 3693, Rev. Laws 1910.

Under the foregoing provisions of the statute, it is within the discretion of the trial court to order an additional drawing of names from the jury box, or to direct that an open venire issue to the sheriff for such number of jurors as may be deemed necessary to be selected from the body of the county. It follows that the challenge to the open venire was properly overruled.

Several errors are assigned upon rulings of the court in the admission and rejection of evidence.

The first of which is that the court erred in admitting the testimony of Dr. W. N. Kearney detailing declarations of the deceased, because they were not made under a sense of impending death.

Dr. W. N. Kearney testified:

That he resided at Oswalt; had practiced medicine for 23 years; was called to attend Pete Roland within an hour after he was shot and found him in a condition of collapse from a gunshot wound in his left side. That the wound was necessarily fatal. That Dr. Looney was with him the next day and agreed with him that the wound was necessarily fatal. That, after he and Dr. Looney had examined the wound, he explained to deceased the character of his wound, and that there was no possible chance of recovery. That in the morning of the day Roland died,

in answer to his questions, he stated, "Pete, you will have to go," and Roland asked him: "Do you think you can keep me alive until my mother comes? She will be here at 2 o'clock." And he told him he thought he could. That later Roland stated that the defendant Allen shot him and robbed him of $22; that Allen hit him over the head with a gun and kicked him. That Roland died about 3 p. m. the second day after he was shot.

To render a dying declaration admissible in evidence, it should be made clearly to appear that the declaration was made under a sense of impending death, and that all hope of recovery was gone. This may be made to appear from what the injured person said, or where, from the nature and extent of his injuries, it is evident that he must have known that he could not survive. It is sufficient if it satisfactorily appears that the declaration was made under a sense of impending death, whether it be directly proven by the express language of the declarant or be inferred from his evident danger, or the opinions of the medical attendants, stated to him, or from other circumstances of the case, such as the length of time elapsing between the making of the declaration and his death.

It is for the court to consider from the evidence whether a declaration was made under circumstances rendering it admissible as a dying declaration, and the credibility to be attached to a dying declaration is a matter for the jury.

The preliminary proof in this case was clearly sufficient to warrant the conclusion of the court that the declaration was made under a sense of impending death, and without hope of recovery. The declaration of the deceased was therefore properly admitted in evidence.

The next is that the court erred in refusing to admit in evidence a certain medical authority. It appears that the defendant called as a witness Dr. D. Autry, who testified that "Dr. Clevenger's Medical Jurisprudence of Insanity" is recognized by the medical profession as an authority on diseases of the mind. Defendant then offered to read in evidence a page from this book. On objection the court held the same to be inadmissible.

It is sufficient to say that medical books are not admissible as testimony, and the same was properly excluded.

The trial court, at the request of counsel for the defendant, submitted the issue of murder as defined in Penal Code, subdivision 1, sec. 2313, Rev. Laws 1910—that homicide is murder, "when penetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being," and the issue of manslaughter in the first degree. In the instructions given the court made no reference whatever to murder as defined by the third subdivision of section 2313—that homicide is murder "when perpetrated without any design to effect death by a person engaged in the commission of any felony."

The defendant was not tried for deliberate and premeditated murder. The information was an accusation of murder committed while engaged in the commission of a felony, and the defendant was tried for killing Pete Roland, without a design to effect his death, during the perpetration of a robbery. A homicide which occurs during the perpetration of a robbery is, under the statute, "murder," although the robber did not intend to kill when he fired the fatal shot. So in this case, upon the undisputed facts, the power to convict of manslaughter in the first

degree, which belongs to the jury in cases where the degree depends upon the intent, could not properly be exercised, because premeditated design or an intent to kill is not a necessary ingredient of the crime in this kind of murder, and for this reason the instructions given by the court were misleading and inapplicable to the accusation and the uncontroverted facts in evidence in the case.

The record shows that, after the jury had deliberated on their verdict for several hours, they were returned into court and announced that they desired an explanation from the court of instruction numbered 14, which is as follows:

"(14) If you believe from the evidence that, at the time of the alleged shooting, the defendant, John Allen, was in such a state of voluntary intoxication that he was incapable of reflection upon the nature and consequences of his act, and that he was incapable to form a design to effect the death of Pete Roland, then it is your duty to acquit the defendant of the charge of murder."

Whereupon, over defendant's objection, the court added to said instruction:

"Then you should inquire as to whether or not the defendant is guilty of manslaughter in the first degree."

The instruction without this modification was given on the request of the defendant. In the case of *Cheadle v. State*, 11 Okla. Cr. 506, 149 Pac. 919, L. R. A. 1915E, 1031, it is said:

"Under our Penal Code, first subdivision, sec. 2313, Rev. Laws 1910, homicide is murder, 'when perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being,' and evidence of intoxication is admissible to show an absence of the premeditated design to kill, for

the purpose of determining whether the offense was murder or manslaughter, and a state of intoxication which will reduce homicide from murder to manslaughter in the first degree must be of such character and extent as to render the defendant incapable of entertaining or forming a design to effect death, and the question is for the jury to determine."

In the *Cheadle Case* there was no pretense that the homicide was committed by a person engaged in the commission of a felony, and the doctrine of that case has no application to the case at bar.

The erroneous instructions having been given in compliance with the request of the defendant, and being more favorable to the defendant than the law requires, the errors complained of come within the rule of "invited error." It is a general rule that when the defendant requests the trial court to give certain instructions to the jury as the law governing his case, which are refused, but which in whole or in part are embraced in the instructions given by the court, he cannot afterwards be heard to complain that the giving of the law as requested was error on the part of the trial court.

After a very careful examination of the record, we have failed to discover anything whereof the defendant has just right to complain. Under the law and upon the undisputed facts, it would seem that the demands of justice and the protection of society clearly required in this case that the penalty prescribed by law as a punishment for murder should have been imposed upon the defendant.

However, upon the record before us our duty is performed by an affirmance of the judgment and sentence.

The judgment of the district court of Love county herein is therefore affirmed.

ARMSTRONG and MATSON, JJ., concur.