CLAUDE BENJAMIN McCLENDON et al. v. STATE.

No. A-5302.  Opinion Filed Dec. 18, 1926.
(251 Pac. 515.)

Hoyt & Butler, for plaintiffs in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J.  The plaintiffs in error, hereinafter

called defendants, were jointly tried and convicted in the district court of Dewey county for the crime of manslaughter in the first degree, and each sentenced to serve a term of 15 years in the state penitentiary.

The facts disclosed by the record are about as follows: The defendants are brothers, married men, each under the age of 40 years, living on adjoining farms near the town of Leedy. The deceased, W. H. Morrison, was a widower, 66 years of age, who lived near. On the afternoon of December 11, 1924, Morrison, for the purpose of leaving some mail, stopped at the home of defendant Claude Benjamin McClendon, and, upon invitation, ate supper there, and played cards later. He returned there on the morning of December 12th, as he states in his dying declaration, for the purpose of helping defendant butcher a hog. Apparently there was a jealousy on the part of this defendant because of a suspicion of intimacy between his wife and deceased. According to the dying declaration, this defendant began cursing and abusing deceased, and charged him with attempting to break up his home, and ordered deceased off the place. Deceased attempted to leave, and this defendant followed him into the section line. At this time defendant Stephen Alexander McClendon from his place saw some difficulty was occurring, and came up to where deceased and his brother were, and joined in the difficulty, and together they assaulted deceased, inflicting eight wounds on the head, some two to three inches long, apparently by striking him with rocks. Several of his ribs were broken, his side and part of his back bruised into a jelly-like condition, apparently by beating or kicking him. From the effects of these wounds Morrison died four days later. Before his death he made a full statement to his son, a man aged 33 years, and to his son's wife, detailing the manner in which the difficulty occurred, which statement was admitted as a dying declaration. Several assignments are

argued in the briefs. All have been considered, and those which are deemed material will be separately referred to.

Complaint is first made that the dying declaration was not admissible. Before the statement of deceased was admitted, the court, in the absence of the jury, took testimony as to the circumstances under which it was made, and, after determining its admissibility, submitted to the jury all the evidence, so they might properly weigh it. Upon the question of the statement having been made under a sense of impending death, the record shows the following:

"Q. Did he make any statement at that time as to his condition? A. Yes, sir.

"Q. I mean with reference as to what he thought about whether he would survive his injuries or not. A. Yes, sir.

"Q. What did he say? A. Well when I first went in there, I says, 'What is the matter?' and he said, 'They have nearly killed me.' I said, 'Who?' and he said, 'Steve and Claud.' I asked him if he was hurt very bad, and he said, 'Yes, I thought I was dying a couple of times before you came.' I took hold of him, and started to raise him up, and he said: 'Don't do that.' He said, 'I can't get up. I am dying right now.' As soon as he moved he seemed to be in quite a bit of pain. * * *

"Q. Did you have any conversation with your father, you and your wife, or both of you? A. Both of us. He talked quite a bit that night, and that next morning until about 10 o'clock. He didn't talk very much after Thursday at 10 o'clock.

"Q. Did he say anything with reference to your leaving him? A. Yes, sir.    .

"Q. What was his statement? A. Well, he says, 'Don't leave me.' He says, 'Stay with me.' He says, ' I am going to die,' and he called me once. He says, 'Fan me.' He says, 'I am dying.' He says, 'I am gone.' "

It is not essential that there be an express statement

that declarant is going to die or that he has no hope of recovery. If the circumstances, the nature and extent of the injuries, his evident danger, or the opinion of medical attendants, stated to him, or other circumstances, such as the length of time between the time of the statement and death, make it evident that he believed he could not survive, they are sufficient to make the declaration admissible. Under this rule, announced many times by this court, the statement was properly admitted as a dying declaration. Hawkins v. State, 11 Okla. Cr. 73, 142. P. 1093; Poling v. State, 12 Okla. Cr. 27, 151 P. 895, Ann. Cas. 1918E, 663; Allen v. State, 16 Okla. Cr. 136, 180 P. 564.

It is also argued that the court erred in striking the evidence as to whether deceased believed in a Supreme Being. When defendant Stephen Alexander McClendon was on the stand he was asked:

"Q. In your talk with Mr. Morrison was the question of religion or a Supreme Being ever discussed? * * * A. Yes, sir.

"Q. Did he ever tell you whether he believed there was a God? * * * A. He acknowledged there was not."

Later the court said:

"Gentlemen of the jury, the court directs you not to consider the testimony of this witness with reference to what deceased said about his religious belief for the reason that under the Constitution of this state such evidence is not admissible. The Constitution and laws do not admit that character of testimony. * * *"

A dying declaration violates the general rule against hearsay evidence. It is admitted without the sanction of an oath and without opportunity for confrontation and cross-examination. It is an exception or special class of evidence, admitted by reason of necessity, since it frequently happens that no third person is present in a case of homicide as an eyewitness to the facts. In a sense, the

declarant is a witness, and it is uniformly held that his evidence may be impeached the same as that of any other witness. At common law, where the absence of a belief in God and a future state of rewards and punishments rendered a witness incompetent, such absence of belief also rendered his dying declaration inadmissible in evidence. Most, if not all, of the states of the Union, however, by some constitutional provision expressly provide that no religious test of any kind shall be required. Hence it may be said that the competency or admissibility of a dying declaration is not affected by the religious belief or lack of religious belief of the declarant. State v. Hood, 63 W. Va. 182, 59 S. E. 971, 15 L. R. A. (N. S.) 448, 129 Am. St. Rep. 964; Worthington v. State, 92 Md. 222, 48 A. 355, 56 L. R. A. 353, 84 Am. St. Rep. 506; (notes) 1 R. C. L. p. 532, § 74.

The proof adduced, or attempted to be adduced, on this point is not in proper form. The answer of the witness states a mere opinion or conclusion, and was properly stricken by the trial court, although the wrong reason for striking was given. In 4 Encyc. of Ev. 1014, § 3, it is said:

"For the purpose of affecting the credibility of the declarations, it is competent to show that the declarant, because of his want of religious belief, was not a person of such a character as was likely to be impressed with a religious sense of his approaching dissolution, and that consequently no reliance is to be placed upon what he said. * * *"

In 1 R. C. L. 548, § 97, it is said:

"The dying declaration of a person is simply a part of the evidence. * * * It is subject to discredit and impeachment by any competent testimony which impairs its value. * * * The oath or affirmation presupposes a belief by the one making it in that Superior Power which is clung to by all Christian people. As affecting the credit of any witness' testimony it may be shown that he has no sense of the binding force of his oath or affirmation, because he does not believe in a Supreme Being. For the same reason such

testimony is admissible as affecting the credit to be given by the jury to a dying declaration. * * * The dying declaration may be discredited by any testimony which would be permissible to discredit the testimony of the declarant, were he in court testifying. This being the case, the dying declaration may be discredited by showing that the declarant was a nonbeliever in God, and such testimony is for the jury to pass on, and to say to what extent it shall be allowed to affect the value of the dying declaration as evidence. * * * (Authorities cited.)"

Even if the proof or offer of proof had been in the proper form, in the light of all the evidence, the rejection of this evidence would not require a reversal.

After verdict, a motion for a new trial was filed, along with the other assignments of error set out, that the defendant Claud Benjamin McClendon, during the progress of the trial, and while his counsel was arguing to the jury, was absent from the courtroom to answer a call of nature, and was denied his legal right to be present at every stage of the trial. This was supported by an affidavit of Fred L. Hoyt, one of the attorneys for defendant, and also by an affidavit of a deputy sheriff. It appears that defendant Claud Benjamin McClendon requested to be taken out of the courtroom, and, without notifying counsel or the trial judge, he was taken to a toilet, and was absent about three minutes, and returned into court. The affidavit does not disclose whether or not his counsel at the time knew of this absence. Section 2641, Comp. Stat. 1921, is in part:

"If the indictment or information is for a felony, the defendant must be personally present at the trial, but if for a misdemeanor not punishable by imprisonment, the trial may be had in the absence of the defendant. * * *"

As a general rule, a defendant on trial for a felony must be present throughout the trial, and is not permitted to waive his presence. Humphrey v. State, 3 Okla. Cr. 504, 106 P. 978, 139 Am. St. Rep. 972; Ex parte Lyde, 17 Okla.

Cr. 618, 191 P. 606; Cole v. State, 35 Okla. Cr. 50, 248 P. 347. This requirement is for the benefit of the defendant that he may be accorded his constitutional and statutory rights, and it is said to be against public policy, and contrary to the dictates of humanity, to permit an accused to waive the advantage his presence may afford him. There are, however, exceptions to the literal enforcement of his right under all conditions. Thus it is generally held that, where the jury during a criminal case is permitted to view the scene of the crime, although such view is a part of the trial, and is the taking of evidence, the presence of defendant is not essential. 16 C. J. 816, § 269. Many authorities are cited in support of this exception. A great many of the states hold in effect that in a case not capital, if the defendant has been released on bail, and absconds, or is voluntarily absent after his arraignment and plea, the trial may proceed, and the verdict be received in his absence. Numerous authorities also hold that a temporary absence from the courtroom for a short time during the trial, even in a capital case, is not such an invasion of a defendant's rights as to be ground for a reversal. Several of the following cases are very similar to this case: 16 C. J. 817, § 2071; People v. Bush, 68 Cal. 623, 10 P. 169; People v. Miller, 33 Cal. 99; Van Houtan v. People, 22 Colo. 53, 43 P. 137; State v. Rubaka, 82 Conn. 59, 72 A. 566; State v. McGinnis, 12 Idaho, 336, 85 P. 1089; Doyle v. Commonwealth, 37 S. W. 153, 18 Ky. Law Rep. 518; State v. Ricks, 32 La. Ann. 1098; State v. Gonce, 87 Mo. 627; State v. Bell, 70 Mo. 633; State v. Grate, 68 Mo. 22; People v. Bragle, 88 N. Y. 585, 42 Am. Rep. 269; Commonwealth v. Simon, 44 Pa. Super. Ct. 538.

To permit the short absence of one of the defendants from the courtroom during the argument of his counsel to work a reversal would be to permit him to take advantage of his own wrong. Certainly, if the attention of the trial judge had been called to the desire of the defendant to withdraw, the proceedings would have been suspended. His

leaving under the circumstances he did without the knowledge of the counsel for the state and the trial judge, although at his request he was accompanied by a deputy sheriff, puts him in the same position as if he had escaped from the courtroom for that period of time.

Upon a consideration of the whole case, we believe defendants had a fair trial, that the issues of law were fairly submitted, and the verdict and judgment is amply sustained by the evidence.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.