## TOM SANDERS v. STATE.

No. A-5569.  Opinion Filed Jan. 29, 1927.
(252 Pac. 855.)

Wilkinson & Hudson, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Chas. Hill Johns, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Pittsburg county of manslaughter in the first degree and sentenced to serve a term of six years in the state penitentiary.

On the night of November 22, 1924, there was a dance in an isolated and rough part of Pittsburg county at the home of Hunter Cowan. The record indicates that it was a rough and lawless community. Numerous attendants at the dance were drinking "cat whisky" and "choc beer," and various of the attendants carried concealed weapons. During the course of the evening, the defendant and two or three other persons gathered near a doorway in the hearing of the ladies, who were in the house, and were cursing freely. Craig Fite came up and in rather temperate language rebuked them for this language in the

hearing of the ladies, upon which defendant said, "You big son of a bitch you, what is it to you? * * *" Fite said, "Don't say that to me or I will hit you." Defendant repeated it with an oath, and Fite struck defendant knocking him down. While rising, defendant fired twice with a pistol; at the last shot the gun was against the side of Fite, who was unarmed. Immediately after the shooting, Fite was taken to a hospital at Hartshorne, and died about 22 hours later. Before his death he made a statement, which was admitted in evidence as a dying declaration. The morning following the difficulty, an officer arrested defendant. He testified at the time defendant stated that he had heard the shooting but knew nothing about it; that he was "so damn drunk that he did not know anything." Defendant testified that he did not engage in the quarrel with deceased, but it was some one else; that he said nothing, and was struck by deceased without provocation, and fired two shots in his necessary self-defense.

While confined in the jail, defendant told his cellmate, Tom Collins, who was also an eyewitness of the shooting, the best thing all of them could do was to keep their mouths shut and say nothing. The assignments of error argued may be considered under the following heads: First. The denying defendant's application for a continuance. Second. The admission of incompetent evidence, including the purported dying declaration. Third. The excluding of competent evidence offered by defendant. Fourth. Erroneous instructions and refusal of requested instructions. These assignments will be considered in the order presented.

Before entering the trial, defendant filed an application for a continuance, based on the absence of Bill Dugan, an eyewitness to the homicide, who lived in an outlying section of Pittsburg county. His name was indorsed on the information as a witness for the state, and a

subpoena was issued by the state for his attendance, but it was returned February 18, showing no service. The trial did not begin until February 22.

An application for continuance is addressed to the sound discretion of the trial court, and, unless there is an abuse of discretion, this court will not reverse the judgment of the trial court because of the overruling of such application. It is fundamental that, in order to entitle a defendant to a continuance on account of the absence of a witness, due diligence to procure the attendance of such witness must have been used. Here, of course, the defendant knew of the presence of Dugan at the time of the homicide. If he desired the presence of this witness, it was his duty to use all reasonable diligence to secure his attendance. In the early case of Kirk v. Territory, 10 Okla. 46, 60 P. 797, the territorial Supreme Court, in passing on a somewhat similar state of facts, said:

"The defendant contends that he was excused from making any effort to procure the attendance of the brother and sister-in-law, for the reason that he had a right to rely upon the fact that their names were on the indictment, and that the territory was bound to produce them. We do not regard this as sufficient excuse for a failure to make an effort to secure their attendance in his own behalf. The law requires that one who requests a continuance shall show by affidavit that he has used due diligence to procure the attendance of the absent witness; this is required of him as an evidence of his good faith. It is not sufficient for him to show that the adverse party has used due diligence to obtain the absent witness and failed. If this were permitted, the party might in every case ascertain from the subpoenas issued by the adverse party the names of the witnesses not found, and then make affidavit that such persons were necessary witnesses for him, and that he had issued no process because the adverse party had done so. The party who causes a witness to be subpoenaed may excuse them before attendance, or discharge them before testifying. He is under no obligation or duty to hold them for the adverse party."

It is not diligence to rely upon the effort of the state to procure his attendance, and, failing to use diligence, his application is bad on its face and properly denied.

The second contention, the admitting of incompetent evidence, is directed to the evidence of Willie Hall, a nurse at the hospital at Hartshorne, who testified to a statement made by deceased that Tom Sanders shot him, and he believed kicked him in the stomach. There was no sufficient predicate laid for the admission of this testimony as a dying declaration, and, after being admitted, it was later stricken by the court, and the jury admonished that they should not consider it. The fact that deceased was shot by defendant being admitted, this statement of the witness was immaterial, so there remains only the bare statement that deceased believed defendant kicked him. It is not always possible, by withdrawing evidence and instructing the jury to disregard it, to remove the effect of admitting incompetent evidence. It appears to us, however, that at most this single statement would not influence the jury in arriving at the guilt or innocence of defendant, but conceivably might influence them in fixing the punishment. The jury here, however, did not fix the punishment, but were unable to agree on it, and it was assessed by the court. This single statement does not require a reversal. Under this assignment the admissibility of the dying declaration is also challenged. The proof of the belief by deceased of impending death is not shown clearly by a direct statement of deceased. The strongest statement of the deceased is that he realized the seriousness of his condition and that his wound would probably result in death. Upon this point B. M. Johnson testified:

" * * * I asked him the question, 'Who shot you?' His answer was, 'Tom Sanders shot me; I guess the first shot weakened me some; that is about all there is to it.' I asked him the question, I says, 'Craig, I suppose you realize you are in a serious condition, don't you?' His answer was, 'Yes: I am.' My next question, 'Do you realize that

this is likely to cause your death?' His answer was, 'Yes; it is.' "

To render a statement admissible as a dying declaration, it is not essential that there be any express statement that declarant believed he was going to die, or that he has no hope of recovery, but such condition may be inferred from his evident danger, his conduct, or the opinions of medical attendants or others stated to him, or from other circumstances of the case, such as the length of time elapsing between the declaration and death. Morris v. State, 6 Okla. Cr. 29, 115 P. 1030; Poling v. State, 12 Okla. Cr. 27, 151 P. 895, Ann. Cas. 1918E, 663; Allen v. State, 16 Okla. Cr. 136, 180 P. 564; Morehead v. State, 12 Okla. Cr. 62, 151 P. 1183, Ann. Cas. 1918C, 416; Greenleaf Ev. § 158.

Complaint is next made that the court excluded evidence of the general reputation of deceased, and counsel in his brief asserts that, if permitted, he could have proven deceased was a professional law breaker, running a "wild cat" still, and other matter of this character. Even if this class of evidence was true, we fail to see how it was material to the issue being tried. Evidence of the reputation of deceased as a violent and dangerous person was admissible as tending to throw light on the state of mind of defendant at the time he shot deceased, or to show who was the aggressor, but much of the excluded matter complained of is entirely irrelevant. It appears that the court was fairly liberal in admitting evidence of character of deceased, and there is nothing in this contention of substantial prejudice.

It is next argued that the court erred in his instruction No. 19 in submitting to the jury the admissibility of the dying declaration. In this instruction the jury are told that, if they find the declaration was made under a fixed belief that death was impending, they should receive the same and give it such weight and credit as they deemed it

entitled to have, and, if the statement was not made in fear of impending death and the absence of a hope of recovery, it should not be considered by them in reaching a verdict. The admissibility in evidence of the dying declaration is a question for the court. The proper practice when a dying declaration is offered in evidence requires that the court, in the absence of the jury, shall hear the necessary preliminary proof. If this proof is deemed by the court sufficient to make the declaration admissible, then both the preliminary proof and the declaration should be given anew before the jury in order that they may know the circumstances under which the statement is made and thereby be able to give it proper weight and credit. The territorial Supreme Court in the case of Willoughby v. Territory, 16 Okla. 577, 86 P. 56, 8 Ann. Cas. 537, affirmed a conviction where the identical instruction was given. Even if we should hold the giving of this instruction error, it is error beneficial to defendant. Since the trial court had already held the statement admissible, the submitting its competency to the jury, if it had any effect, would tend to weaken its probative force. In any event it is not reversible.

The requested instructions refused by the court of which complaint is made, so far as they were applicable, were covered substantially by the general charge of the court. Considered as a whole, they fairly and correctly state the law of the case and are sufficient.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.