ALICE SMITH v. STATE.

No. A-8745.   Dec. 14, 1934.
(38 Pac. [2d] 591.)

G. H. Montgomery and J. N. Fortner, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter referred to as the defendant, was convicted of manslaughter in the first degree, and sentenced to imprisonment in the state penitentiary for a period of five years.

The testimony on behalf of the state in substance is that the deceased was the husband of the defendant.   They were living together as husband and wife at the time of the killing.   The day prior to the killing, defendant attended the State Fair at Dallas, Tex., and returned home the early morning of the day of the difficulty.   When defendant returned home, her husband was not there.   She went to bed and slept until about 10 o'clock in the morning, and got up and prepared the noon meal, but her husband did not come home at noon.   About the middle of the afternoon the defendant started out and found him at the home of Robert Lee, where he was engaged in a card game, and showed evidence of being intoxicated.   The defendant asked him to go home with her, and he replied

that he would when the game was over. When the game was over, the deceased went with defendant to their home. The record shows that at the time of the difficulty the deceased and defendant were on a side street about a block and a half from their home. No one was present when the deceased and the defendant reached the shade tree where the difficulty took place. The defendant in her testimony states, when they got near the corner of the street, near the shade tree, the deceased told her before he would go home with her he would break her damn neck:

"And he commenced to choke me. I had his knife, his watch, and everything. It was a little knife with a spring. I commenced jiggering at him. I did not think I would kill him. I stabbed him because he was choking me, and I thought he would kill me the way he was choking me; I struck him twice, the first time he tightened his grip, and the second time he turned me loose. When he turned me loose, he said he was going to the doctor, and when he started I followed on behind him."

The testimony further shows the defendant went in the car in which the deceased was riding to the doctor's residence. The doctor was not at home and they came back to his office. While the deceased was being dressed, defendant came to the door, and deceased objected and got hold of a glass and was going to try to hit her with it.

The state introduced by Willie Smith, over the objection of the defendant, what was termed a dying declaration or statement of the deceased as to what occurred. He stated:

"Louie Smith was my brother; he was at my father's house when he died; he died about six days after he was cut; I was with him all the time. My brother said 'she got me this time,' and I asked him who got him; he said he was not going to live all the time—he would say he wasn't going to live. This statement was after he was

cut. The night he died, about one or two hours before he died, he made a statement as to how it happened. He said he was on his way home, and she wanted him to go to the house, and he did not want to go, he wanted to go to my house; he had not been to my house for a day or two and was on the way to my house. He further stated he wanted the defendant to go on home, he didn't want to go but she carried him on, he being drunk he could not protect himself. She caught hold of him and stabbed him. I asked him who was around there, and he said nobody. He said before she stabbed him he had said he was going to quit, and she said before she would have him quit her she would kill him."

The deceased further in the statement said he had Dr. Moreland call the law and lock her up; that she was the last one to come in to the office and they were about to fight. The foregoing is all the testimony that is deemed necessary to set forth in this opinion.

The defendant has assigned 10 errors alleged to have been committed by the court upon which she relies for a reversal. The defendant, discussing her first assignment, contends the court erred in interrupting counsel for the defendant in his opening statement to the jury while he was stating the circumstances that transpired between the defendant and deceased at the home of Robert Lee a short time before the fatal difficulty, that such remarks of the court were highly prejudicial to the rights of the defendant, and were duly excepted to by her. In presenting her argument upon the first assignment, the defendant insists that the court, when impaneling the jurors for the term, made remarks highly prejudicial to the rights of this defendant and any other defendants who were to be tried at the term of court, when the court stated to the panel, "some jurors think they must be absolutely certain the defendant is guilty. That is not true, if you

are reasonably certain the defendant is guilty, that is sufficient."

As shown by the record, the first time this question was raised was in the motion of the defendant for a new trial. The remarks of the court, complained of by the defendant, do not under section 3120, O. S. 1931, constitute grounds for a new trial in a criminal case. Subdivision 5 of the section is as follows:

"When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial."

This subdivision relates to the trial jury in the case, and does not relate to the entire panel of jurors that may have been summoned for the term of court in which the defendant was tried. There is nothing in the record to show that the remarks of the court prejudiced the rights of this defendant. We have carefully examined the remarks of the court, and we hold it does not constitute a ground of challenge to the entire panel. The record fails to show there was any challenge to the panel or there was any voir dire examination of an individual juror inserted in the record. There is nothing to show that the jurors in this case heard the remarks of the court complained of by the defendant.

We have carefully examined the remarks of the court when it interrupted counsel for defendant while making his opening statement to the jury, and we hold the remarks made by the court did not prejudice the rights of the defendant or prevent her having a fair and impartial trial.

It is next contended by the defendant that the trial court erred in admitting the purported dying declaration or statement made by the deceased to his brother a short

time before the deceased died. The defendant insists and argues at length that this testimony of the witness Willie Smith, the brother of the deceased, as to the dying declaration, was inadmissible and prejudiced the rights of the defendant and prevented her from having a fair and impartial trial, and that it was incompetent, and that her objection to the introduction of the dying declaration should have been sustained.

The defendant in her argument as to the admissibility of the testimony of Willie Smith as to the dying declaration of the deceased contends that a proper and sufficient predicate was not laid to justify the court in admitting the statements of the witness Willie Smith as to the declaration made to him by the deceased a short while before his death.

The question of the admissibility of the dying declaration is primarily a question for the court. When a dying declaration is offered in evidence, the court should require the necessary preliminary proof of its admissibility in the absence of the jury, but, where no objection is made to the preliminary proof being made in the presence and hearing of the jury, its submission to the jury in that manner, if otherwise competent, is not prejudicial. In this case no objection was made to the testimony being offered in the presence of the jury before its admissibility was passed upon by the court. The question here to be determined is the question as to whether or not the state offered competent testimony showing the testimony of the witness to be such as was admissible under the law as a dying declaration.

To warrant the admissibility of the statement as a dying declaration, it is not essential that there be an expressed declaration that the declarant is going to die, or

that he is without hope of recovery. It is sufficient if it satisfactorily appears that the deceased believed he could not survive, whether it be directly proven by expressed language or be inferred by his evident danger, or from his conduct. The statement of the witness Willie Smith shows that the deceased stated he was not going to live; that for some time prior to the time of his death he continued to state she got him and that he was not going to recover.

We hold that the statement of the witness was sufficient to show that the deceased realized he could not recover, and that his testimony was admissible. Hawkins v. United States, 3 Okla. Cr. 651, 108 Pac. 561; Blair v. State, 4 Okla. Cr. 359, 111 Pac. 1003; Offitt v. State, 5 Okla. Cr. 48, 55, 113 Pac. 554; Updike v. State, 2 Okla. Cr. 124, 130 Pac. 1107; Hawkins v. State, 11 Okla. Cr. 73, 142 Pac. 1093; Poling v. State, 12 Okla. Cr. 27, 151 Pac. 895, Ann. Cas. 1918E, 663; Allen v. State, 16 Okla. Cr. 136, 180 Pac. 564; Elliott v. State, 18 Okla. Cr. 230, 194 Pac. 267; Beason v. State, 18 Okla. Cr. 388, 195 Pac. 792; Sanders v. State, 36 Okla. Cr. 120, 252 Pac. 855; McClendon et al. v. State, 36 Okla Cr. 11, 251 Pac. 515.

There is a sharp conflict in the testimony. The deceased in his dying statement stated when the trouble occurred the defendant wanted him to go home; that he did not want to go home, but wanted to go to his brother's; that he told the defendant they were going to quit, and defendant stated that before she would have him leave her she would kill him, and then stabbed him with the knife. The defendant stated she came from home to town looking for the deceased, and found him at a neighbor's home where they were playing cards; that she started home with the deceased, and, when they got near their home, on the corner of the street where there was a large shade tree,

the deceased grabbed her by the throat and began to choke her, and, in order to keep him from choking her to death, she struck him with the knife. If the dying statement of the deceased is true, there was sufficient testimony to convict the defendant. The statement of the defendant makes out a clear case of self-defense. This court has often held that conflicting issues of fact are for the sole determination of the jury and that a conviction will not be disturbed on appeal because of a sharp conflict in the evidence if the evidence adduced reasonably tends to support the verdict and judgment. Richards v. State, 22 Okla. Cr. 329, 211 Pac. 515; Campbell v. State, 23 Okla. Cr. 250, 214 Pac. 738.

It is apparent from the record that the jury believed the testimony of the state and reached a conclusion that the defendant was not justified in cutting the deceased with the knife. The jury, after having reached the conclusion that the defendant was guilty, was reasonable in assessing the punishment.

We have carefully examined the record, and find that the defendant was accorded a fair and impartial trial; that the court correctly advised the jury as to the law applicable to the facts; that no prejudicial errors appear in the record. The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.